Woodie versus Berkshire Hathaway. Who is the appellant? Okay. So you're saying you usually win? Is that why you go to that table? You usually win? Is that why you go to that table? All right. May it please the court. Yes. I'm Bill Fix from Jackson Hole, Wyoming. I'm the attorney for Kimberly and Paul Woody and Big Bear Towing and Repair, LLC. This is a diversity case. It started out in state court. It was removed to federal court by Berkshire Hathaway. It's a fairly fact-intensive case, so if I can spend a moment with that. In June of 2013, a fellow by the name of Daniel Reimer approached Paul Woody. Reimer was having trouble in his business, and he said, listen, I'm in the towing business, too. They were friends. If you have any spillover, I'd sure like to work. And Paul Woody said, well, okay, I really don't need an employee, but we occasionally, in the summertime, we have demands on our resources that we don't have in the wintertime, being in a Jackson Hole, greater Yellowstone area. So they entered into an agreement, which established an independent contractor relationship between Mr. Reimer and Big Bear. Everything went swimmingly for a while until Mr. Reimer was involved in a wreck in Idaho in July of 2014. He was driving a wrecker owned by Big Bear, which was permitted under the independent contractor agreement. It wasn't much of a wreck, or so everyone thought at the time. There was no workers' comp claim made at the time by Mr. Reimer. It was made much later, and Big Bear didn't follow the workers' comp report because they thought nobody was injured. Shortly after that, they parted ways, and in 2015, Reimer instituted an action against Big Bear for past wages. The reason that's important is because that goes to the Wyoming Workforce Department Labor Standards Division, and they have a hearing, and the hearing officer decides, you're not entitled to any wages, Mr. Reimer, because you were an independent contractor. And Sam, we cited in the brief the numerous factors while they arrived at that decision. So that was good for Big Bear. They didn't have to pay any wages. Unbeknownst to them at the time was Mr. Reimer settled with the tort fees or in Idaho for $100,000 for damages that he allegedly suffered in that wreck. And then what brings us here today is he also files, Reimer files, sends a letter to Berkshire Hathaway. Making a claim under the underinsured motorist coverage of the commercial policy owned by Big Bear Towing and the Woodies. And under that policy, they're insured numerous vehicles, tow trucks, wreckers, that sort of thing. And who is the insured? The driver of the vehicle? Under the underinsured motorist, yes, it's defined as that is the insured. So Reimer is the insured? Yes. The name insured in the policy is Big Bear Towing and Woody. But for the purpose of the underinsured motorist claim, you're correct. So are you attempting here to assert duties and rights of the insured, who is Reimer, when those duties are not owed to you? No. The interests of Big Bear and Reimer were coincident for a while. Big Bear didn't mind, really, that Reimer collects under the underinsured motorist coverage because it benefits them in some way. But it's the manner in which Berkshire Hathaway accomplished that that created a liability for Big Bear. So your theory is that there was a duty owed to Big Bear to tell Big Bear that Reimer was seeking this coverage? Yes. In fact, at one point... And how do we arrive at that duty in your insurance coverage? It's a compulsory policy. It's a business policy. These compulsory policies are construed most strictly against the insurance companies. They did give Woody... They actually emailed Mr. Woody early on saying, By the way, there has been a claim made. And he responded within a day saying, Oh, I didn't know that. Let me know. Here's what I know. By the way, Mr. Reimer is an independent contractor. And it appears in the claims file. Is there anything in the insurance policy that changes the coverage under the UMC provision based on whether someone is an independent contractor or an employee, so long as they're a driver of the vehicle? No. It doesn't matter. So I don't... I'm having trouble understanding where this duty arises. I understand. And it's a very... I'm not supposed to say very unique. It's a unique set of facts. We can't find a case anywhere close to this. And again, it occurs because of how Berkshire Hathaway accomplished its purpose, which damaged the named insured, Big Bear and Woody. And they did it like this. They entered into... Berkshire Hathaway enters into release with Reimer for the princely sum of $550,000, which was quite generous on Berkshire Hathaway's part at the time, we believe. They don't consult Woody. And they don't say, or Big Bear, they don't say, oh, by the way, we're going to settle this case. Here's a copy of the release. You might want to look at it to see if it's okay with you, because this potentially affects your financial interest. They don't do that. They give them no notice and they... That's the stealing, rather, fiduciary. I mean, we need coverage. We need this coverage to be within the policy. I mean, it would have been nice if they would have done that. It would have been a friendly thing. It would have been good business, perhaps. But is it required? Well, and that's where, precisely, thank you, where the breach of the implied covenant of good faith and fair dealing comes in, because that is, your Honor, when you say it would have been nice, well, the cases talk about, and I learned something in this case I didn't know after 40 years, the implied covenant of good faith and fair dealing harketh back to Roman law. And it was 18th century British common law. They start talking about it. And, of course, it's codified in UCC and other things. But, of course, every contract in Wyoming, and I think most places, there's an implied covenant of good faith and fair dealing. And when the judge, when the court says it would have been nice, that's exactly our point. Not only would it have been nice, it would have been decent, fair, and reasonable. These are all the adjectives that the courts use to advise Big Bear and Woody what was going on. I'm sorry. Well, the decision about whether your client is going to be charged with delinquent workers' compensation payments is a decision not made by Berkshire Hathaway, correct? It's made by the agency. Made by the what? The agency. After the fact, they make it. Okay, but the insurance company can't bind the agency to a determination of whether somebody is an employee or an independent contractor. Well, I disagree with that. Something could have easily been done. Had Big Bear been notified, something could have easily been inserted in the release. Because negotiations take place. Well, whether Workforce Services is going to collect delinquent workers' compensation payments from an employer depends on whether Workforce Services decides that you're an employer as opposed to an independent contractor, right? I think you meant to say employee, but yes. My point is your beef is not with Berkshire Hathaway. Your beef is with the agency coming after you for delinquent payments because you say they're wrong. We didn't have any obligation to make these payments because Reamer was never our employee. No, respectfully, no. Our beef is exactly with our insurer or who didn't investigate, didn't provide us with any results of the minimal investigation that they did do and did not notify us of what was going on when we could have affected the outcome with workers' comp. But nothing in the insurance policy would deny Mr. Reamer benefits under the policy if he was an independent contractor. And that's true. That's fine, but that's not where the problem arises. It's when Berkshire Hathaway negotiates the settlement, leaves Big Bear out of the mix, doesn't let Big Bear know at precisely the time when Big Bear could do something to affect that. They could say, well, wait a minute, you haven't taken into account workers' comp that your labor standards division in the same building just down the hall has already determined that Reamer was an independent contractor. So yes, while it doesn't matter for the UIM coverage whether he's an employer or independent contractor, it makes all the world of difference in terms of what workers' comp does. And further to that, Mr. Woody notices that his premiums double the next year. He doesn't know that. What's going on? They do a loss run and they see it. And then he contacts Berkshire Hathaway in Omaha. Finally, he talks to a lady by the name of Michelle Gomez. And she said, oh, yeah, here's the release. Don't worry about it. Because the release requires Mr. Reamer. And this is actually attached to the complaint because it was such an unusual situation. I wanted to get those facts in front of the court anticipating these kinds of motions, which we occasionally do. In the emails, it does state that Mr. Reamer was responsible for payment of liens. So even at that point, Berkshire Hathaway is saying, now they've gone past giving them no advice. They're giving them bad advice, incorrect legal advice. And I depose the adjuster. She not only is an adjuster, but she's a lawyer back in Omaha. But that's not necessarily germane to why we're here today. So our first beef, if you will, with the district court is we should really be hearing a summary judgment decision, if anything. There is all kinds of facts involved here. And I understand that the district court said, notwithstanding the fact that Berkshire Hathaway attaches the accident report, a copy of the lawsuit between Reamer and Big Bear, and some other extraneous materials which implicates summary judgment, the court says, OK, well, I'm going to ignore that and render a decision anyway. But what we know to be the fact is the judge could not have ignored it because she relies upon the delinquency to reach her decision. And she cites it in her opinion five times. So you're saying it was error not to convert the motion to dismiss to a summary judgment. Exactly. Thank you. Although she labored to get around that, I understand that. But clearly erroneous in our opinion. With respect to the, and even then, under this favorable inference standard, not only did we not get any favorable inferences, we got unfavorable inferences, specifically the deal of the business about the delinquency. Just so I want to be clear about this, Big Bear was never delinquent on any workers' comp payments ever in the history of the universe until Reimer files this thing and Big Bear creates this liability for Big Bear. Up until then, they were golden. So the district court kind of says, well, they were delinquent in kind of a generic way, but they weren't. The only delinquency comes up when they start getting the lien notices in late 2017 from workers' comps saying, oh, by the way, Mr. Woody, you owe us $150,000. Do they owe $150,000 if they establish that Mr. Reimer was never an employee? I'm sorry. You lost me there. Well, if the agency is just, if Workforce Services is just wrong that Reimer was ever an employee, do they have a right to collect on this? I don't know the answer to that. Well, isn't that what you should be pursuing? No. There's, no. And the only reason is, or the reason is, I guess I'm beyond my time. Go ahead. Okay. It's going up. Is that Berkshire Hathaway creates the liability and then walks away from it and says, good luck to you. See you. And they created it with workers' compensation division. The time for dealing with that is long past. The time for dealing with Berkshire Hathaway is still here. Thank you. May it please the Court? Counsel.  John Kopety on behalf of Berkshire Hathaway. You might pull that mic closer to you. There you are. Yes, Your Honor. Thank you. John Kopety on behalf of Berkshire Hathaway Home State Insurance Company, Berkshire Hathaway for short. Your Honors, in 2016 Berkshire Hathaway paid Daniel Reimer $550,000 to settle his underinsured motorist claim. Mr. Reimer made this claim under a policy Berkshire Hathaway issued to Big Bear Towing and Repair. Nobody in this case disputes that Mr. Reimer was entitled to make that claim. He was an additional insured under the policy by virtue of the fact that he was occupying a covered auto, an auto covered by the policy at the time of the accident. What transpired between Mr. Reimer and Berkshire Hathaway in connection with that claim is private to Mr. Reimer and Berkshire Hathaway. This Court may affirm the District Court on the ground that there were no duties Berkshire Hathaway owed to Big Bear Towing. No reason to tell Big Bear that this was going on, that a claim had been made and that you're paying the claim and what the claim is about. You had no duty to do that. Absolutely no duty. As the District Court found and as we pointed out in our briefing below, there's absolutely nothing in the policy that imposed such a duty. There's nothing in the law that imposed such a duty. We are actually able to find a case that's contrary to what they're saying and that was the case we cited to the court out of Florida where they said no, no, no, no. You've got it wrong, Mr. Policy Holder. The insurance company does not have a duty to notify you that we are settling claims of additional insureds simply because of the fact that you had a claim under the policy for the same coverage and because you're the named insured. That's an even stronger argument than would exist here factually. We don't even have those facts. They were strangers. The Woodys and Big Bear were strangers to the policy in the context of this claim. What about the breach of good faith and fair dealing? They fit neither mode, Your Honor. Was that argued before the District Court? The District Court rejected that argument because you have to show first at a minimum that you're an insured. They can't meet that threshold because they didn't have a claim under the policy. They are the insured under the policy. They're the named insured. Well, let's be careful how we address that, Your Honor, because I would direct your court's attention to the Herrick case. That's the most, that was the most analogous case that we could find that involved what would be classically or typically called. That case is different because in that case the husband was actually the one who was suing, right? Correct. That's not the case here. You don't have, I mean, there are some significant differences between that case and our case. Significant, but I'm not sure how much of a difference it makes because what the court was emphasizing here is we're not going to impose additional duties on the insurance company because it's going to divide the insurance company's loyalties. Who is, you have to first identify who is the insured. In that case, the insured was clearly the tortfeasor, who also was a named insured on the policy, as was the husband who asserted the claim. The husband in that case was deemed to be a stranger to the policy, even though he was named. He was a stranger to the policy for purposes of that claim. No duties whatsoever were owed to him. He was directly adverse to the policy. He was suing the insured. Well, what would happen here, Your Honor, if Berkshire Hathaway had done what they're claiming we should have done, it would have put us adverse to Mr. Reimer, the person to whom we owe duties of good faith and fair dealing. Think about what that might have resulted in. It may have resulted in our causing an intentional interference with the contractual negotiations between Reimer and the Department of Workforce Services in negotiating down that lien. It may have required Mr. Reimer to have paid more money back to workers' comp to his detriment. What they're arguing is if you had alerted us, we would have informed you he's not an employee, which information could have been passed on to Workforce Services and resolved all of this up front without having us to then get a delinquency charge against us. It would not have mattered. He hasn't shown how that would have even remotely made a difference. That lien operates, there are two liens provisions we're talking about here, Your Honor. The first lien provision we're talking about is the 105 lien. That's the lien against the tortfeasor and his insurance company, Mr. Locke and his insurance company. And the lien that would be asserted against the UIM carrier, which would have been Berkshire Hathaway in this case. So that's the lien we're talking about that got satisfied. The second lien that we're talking about, the one that's applicable here and which we have absolutely no responsibility for and which is the lien that's entirely their problem, not Berkshire Hathaway. It wasn't created by anything Berkshire Hathaway did. That lien is the lien against the employer for being delinquent on workers' comp payments made for workers' compensation premiums that arise when payments are made to or on behalf of a worker. That's strictly between Berkshire or between Big Bear and workers' compensation. They determined that he was an employee. They might have different standards. Workers' comp division may have different standards in determining who is and who is not an independent contractor. But at the end of the day, what we have not heard is why is Big Bear precluded from going forward and contesting a lien and putting on its case that Mr. Reimer was not an insured or was not an employee but was an independent contractor? If we had done that, think what that might have done. Would then workers' comp go after Mr. Reimer to recover all the payments made to or on his behalf because they made a mistake? And by the way, you were lying to us, and thank you for Berkshire Hathaway for telling this information. And then what's that do to us vis-a-vis Mr. Reimer? We've now breached duties to Mr. Reimer, duties which we clearly owe to him. They have not shown what duty in law that we could remotely owe to Big Bear in the context of this case. They did make a claim. It wasn't their claim. It was Mr. Reimer's claim, and we dealt strictly with him as required by law. We treated him fairly, and we excluded all other considerations because there were no other insureds in this case in the context of this claim. So that would be my response to that, Your Honor, that we simply didn't owe any duties to the named insured in this case because it wasn't the named insured's claim. And I think the same would be for bad faith, Your Honor. There was no bad faith in this case simply because we didn't deny a claim. No claim was made by Big Bear. I understand the law in Wyoming, Your Honor, is the duty of good faith means there's two types of bad faith in Wyoming, two types of good faith and fair dealing. The first is the insurance company has the duty of acting in good faith in handling a third-party claim. That's not the situation here. And there's a duty of good faith and fair dealing on the part of the insurance company not to deny a first-party claim, that is, claim for benefits under the policy, unless you have a reasonable basis for doing so. So in the context of this case, clearly Big Bear doesn't fit either of those molds. So, again, as I started off, this Court may appropriately affirm the district court because there simply were no duties owed by Berkshire in the context of this case to Big Bear merely because Big Bear was the named insured in the policy. Again, for purposes of this claim, it was essentially a stranger to the contract, to whom no duties whatsoever were owed in handling and settling Mr. Reimer's UIM claim. And I think probably the best way this can be illustrated is their last claim, which again was the contractual breach of the covenant of good faith. Again, if you take that to its logical conclusion, you can only, it makes sense to affirm the district court because, again, they were looking to create additional duties that weren't found in the policy, which is contrary to the covenant of good faith and fair dealing. Two, Berkshire Hathaway was doing nothing more than exercising its rights under the policy, which was to adjust and pay claims in accordance with the UIM provisions of the policy. And finally, what they were looking to do is to create additional rights simply not found in the policy, not found in the contract, which is contrary to Wyoming law. So for all the reasons that, for all the reasons why that duty exists, this court can simply conclude that they don't apply here for the obvious reasons that would be contrary to the covenant of good faith and fair dealing with regard to both the additional insurance case and the insurance company. So we would ask that the court affirm the well-reasoned decision of the district court and find that the decision was proper. Thank you. Thank you. Thank you, counsel. Thank you both for your arguments this morning, and this case is submitted. Court will be in recess until 2.30 this afternoon.